# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| Levita Simmons, Administrator of the Estate of Arthur Scott, and Jeffrey Orvis, Administrator of the Estate of James Orvis, | CASE NO. 6:21-cv-02036 |
| Plaintiffs, | |
| vs. | |
| Tyson Foods, Inc., doing business as Tyson Pet Products, and Tyson Fresh Meats Group, a wholly owned subsidiary of Tyson Foods, Inc., John H. Tyson, Noel W. White, Dean Banks, Steven R. Stouffer, Tom Brower, Mary A. Oleksink, Elizabeth Croston, Scott Walston, David Scott, Tom Hart, Cody Brustkern, John Casey, Bret Tapken, Hamdija Beganovic, Ramiz Mujelic, and Unknown Plant Managers and Supervisors at Tyson Waterloo Plant and Unknown Plant Managers and Supervisors at Tyson Independence Plant, | |
| Defendants. | |

---

## BRIEF IN SUPPORT OF MOTION TO DISMISS
## TYSON FOODS, INC. and TYSON FRESH MEATS GROUP


### (Oral Argument Requested)

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND STATEMENT OF ISSUES................................................. 1

BACKGROUND.................................................................................................. 2

ARGUMENT ....................................................................................................... 3

I.      Plaintiffs' claim is barred in this Court under the Iowa Workers'
        Compensation Act. ................................................................................. 3

II.     Plaintiffs fail to adequately plead causation. ...................................... 5

III.    The complaint fails to comply with the Iowa COVID-19 Response and
        Back-to-Business Act. ......................................................................... 12

IV.     Plaintiffs' claims are preempted.......................................................... 13

        A.      The complaint takes no account of the federal designation of
                Tyson facilities as critical infrastructure. ............................ 13

        B.      The complaint takes no account of the broad, express
                preemption of the Federal Meat Inspection Act (FMIA). ..... 16

CONCLUSION.................................................................................................. 18

Case 6:21-cv-02036-LRR-KEM   Document 5-1   Filed 06/28/21   Page 2 of 26

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge,*
   403 U.S. 274 (1971) ............................................................................... 15

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................... passim

*Bailey v. Batchelder,*
   576 N.W.2d 334 (Iowa 1998) ............................................................... 3

*Cary v. Hickenlooper,*
   673 F. App'x 870 (10th Cir. 2016) ...................................................... 10

*Crosby v. Nat'l Foreign Trade Council,*
   530 U.S. 363 (2000) ..................................................................... 15, 16

*E. Air Lines, Inc. v. McDonnell Douglas Corp.,*
   532 F.2d 957 (5th Cir. 1976) .............................................................. 15

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
   751 F.3d 990 (9th Cir. 2014) ................................................................ 6

*Fields v. Brown,*
   No. 6:20-CV-00475, 2021 WL 510620 (E.D. Tex. Feb. 11, 2021) .......... 18

*Fish v. Princess Cruise Lines Ltd.,*
   No. CV 20-3894 DSF (C.D. Cal. Aug. 21, 2020) .................................... 7

*Hager v. Ark. Dep't of Health,*
   735 F.3d 1009 (8th Cir. 2013) ............................................................ 10

*Hardin Cty. Sav. Bank v. City of Brainerd,*
   602 F. Supp. 2d 1012 (N.D. Iowa 2008) ............................................... 8

*Harned v. Farmland Foods, Inc.,*
   331 N.W.2d 98 (Iowa 1983) ............................................................. 1, 4

*Hillman v. Maretta,*
   569 U.S. 483 (2013) ........................................................................... 15

*Hines v. Davidowitz,*
   312 U.S. 52 (1941) ............................................................................. 16

Case 6:21-cv-02036-LRR-KEM   Document 5-1   Filed 06/28/21   Page 3 of 26

CASES (CONT.)

*In re Pre-Filled Propane Tank Antitrust Litig.*,
   893 F.3d 1047 (8th Cir. 2018) .................................................................. 6

*In re RFC & ResCap Liquidating Tr. Action*,
   444 F. Supp. 3d 967 (D. Minn. 2020) ..................................................... 8

*Jensen v. Vanderleest*,
   Nos. 9-369, 98-1950, 1999 WL 975879 (Iowa Ct. App. Oct. 27, 1999).................. 3

*Kelly v. City of Omaha, Neb.*,
   813 F.3d 1070 (8th Cir. 2016) ................................................................. 6

*Kuciemba v. Victory Woodworks, Inc.*,
   No. 20-cv-09355-MMC (N.D. Cal. May 10, 2021), ECF. No. 34........................... 7

*Mielke v. Ashland, Inc.*,
   No. 4:05-CV-88, 2005 WL 8157992 (S.D. Iowa July 29, 2005) ............................ 5

*Missourians for Fiscal Accountability v. Klahr*,
   830 F.3d 789 (8th Cir. 2016) .................................................................. 8

*Nat'l Meat Ass'n v. Harris*,
   565 U.S. 452 (2012) ............................................................................ 17

*Nelson v. Lindaman*,
   867 N.W.2d 1 (Iowa 2015) ..................................................................... 12

*Nelson v. Winnebago Indus., Inc.*,
   619 N.W.2d 385 (Iowa 2000) .................................................................. 4

*Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*,
   831 F.3d 961 (8th Cir. 2016) .................................................................. 8

*Peterson v. Silverado Senior Living, Inc.*,
   790 F. App'x 614 (5th Cir. 2019) ............................................................ 10

*Phillips v. Covenant Clinic*,
   625 N.W.2d 714 (Iowa 2001) .................................................................. 8

*Rancho Viejo, LLC v. Norton*,
   323 F.3d 1062 (D.C. Cir. 2003)............................................................... 15

**CASES (CONT.)**

*Rincon v. Covidien,*
  No. 16-CV-10033 (JMF), 2017 WL 2242969 (S.D.N.Y. May 22, 2017)................ 11

*Schaaf v. Residential Funding Corp.,*
  517 F.3d 544 (8th Cir. 2008) ....................................................................... 7, 11

*Schneider v. Par.,*
  242 Iowa 1147, 49 N.W.2d 535 (1951) ............................................................ 13

*Suckow v. NEOWA FS, Inc.,*
  445 N.W.2d 776 (Iowa 1989) ............................................................................ 4

*Swindol v. Aurora Flight Scis. Corp.,*
  805 F.3d 516 (5th Cir. 2015) ............................................................................. 8

*Tigges v. City of Ames,*
  356 N.W.2d 503 (Iowa 1984) ............................................................................. 4

*Valentine v. Collier,*
  960 F.3d 707 (5th Cir. 2020) ............................................................................. 8

*Walker v. Mlakar,*
  489 N.W.2d 401 (Iowa 1992) ............................................................................. 3

*Wazelle v. Tyson Foods, Inc.,*
  2:20-CV-203-Z (N.D. Tex. June 25, 2021), ECF No. 44.................................. 17, 18

**STATUTES**

21 U.S.C. § 678.................................................................................................... 17

50 U.S.C. § 4511(a) ....................................................................................... 15, 16

Iowa Code § 4.1(20)............................................................................................ 12

Iowa Code § 85.3(1)......................................................................................... 3, 5

Iowa Code § 85.20(1)........................................................................................... 3

# TABLE OF AUTHORITIES
(continued)

Page(s)

STATUTES (CONT.)

Iowa Code § 686D.2 ............................................................................... 12

Iowa Code § 686D.4 ....................................................................... 2, 12, 13

OTHER AUTHORITIES

9 C.F.R. § 416.5(c) ............................................................................... 18

85 Fed. Reg. 26,313 (Apr. 28, 2020) ....................................................... 15

IA LEGIS 1070 (2020), 2020 Ia. Legis. Serv. Ch. 1070, Sec.11 (S.F. 2338) ..................................................................................................... 12

Case 6:21-cv-02036-LRR-KEM   Document 5-1   Filed 06/28/21   Page 6 of 26

# INTRODUCTION AND STATEMENT OF ISSUES

Over the past year, the United States has faced a global pandemic with an impact and scope without modern precedent. Millions were infected, and more than 600,000 Americans died of complications related to COVID-19. Plaintiffs allege that Arthur Scott and James Orvis worked at Tyson facilities in Waterloo and Independence, Iowa; that they contracted COVID-19 at work; and that they died from the disease. Plaintiffs allege a single claim for "Gross Negligence" against Tyson and various Tyson employees for this alleged workplace injury.

This Court is the wrong forum to resolve Plaintiffs' workplace injury claim. Iowa has a strict, no-fault workers' compensation system that is over-seen by the Workers' Compensation Commissioner. Plaintiffs' claim against Tyson is barred—at least in this Court—under the exclusive remedy provisions of the Iowa Workers' Compensation Act ("IWCA"), which directs that workplace injury claims must be adjudicated by the Iowa Division of Workers' Compensation.

Plaintiffs attempt to circumvent the IWCA by recasting the workplace injury claim as one for gross negligence. But while a narrow exception exists under the IWCA for claims brought against coemployees for "wanton gross negligence," **there is no "wanton gross negligence" exception for employers**, and Iowa courts have rejected attempts to create one: "The legislature is obviously aware of an employer's blanket immunity [under the IWCA] and seems anxious to protect it. It could have created an exception for the gross negligence or intentional torts of an employer when it did so for fellow employees but chose not to do so." *Harned v. Farmland Foods, Inc.*, 331 N.W.2d 98, 100 (Iowa 1983).

The Court need go no further. The claim against Tyson is barred under the IWCA, and the complaint should be dismissed on that basis alone.

\*        \*        \*

Dismissal is also appropriate for the following independent reasons.

**First, plausibility.** Plaintiffs fail to allege plausible, non-conclusory facts establishing causation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, Plaintiffs allege that Tyson failed to implement various workplace safety measures, but the reader must speculate whether or how Tyson's alleged conduct allegedly caused Mr. Scott or Mr. Orvis to contract COVID-19. Without specific non-conclusory allegations establishing causation, the complaint fails to state a plausible claim to relief.

**Second, the Iowa COVID-19 Response and Back-to-Business Limited Liability Act.** The complaint is barred by the Iowa "COVID-19 Response and Back-to-Business Limited Liability Act." Under the Act, businesses are immune from civil liability for injuries sustained "from [an] individual's exposure to COVID-19" on their premises, absent a showing of "actual malice," "reckless[]" disregard of "substantial and unnecessary risk," or "intentional[] expos[ure]." Iowa Code § 686D.4. The complaint is devoid of any allegation that satisfies these requirements.

**Finally, Plaintiffs' claims are inconsistent with federal law.** The complaint fails to take into account the broad express preemption provision in the Federal Meat Inspection Act ("FMIA"), as well as the national emergency declared by the President, the designation of Tyson as critical infrastructure, and numerous other federal directives in response to the pandemic.

## BACKGROUND

Plaintiffs filed this lawsuit in the Iowa District Court for Black Hawk County in April 2021, naming seventeen Defendants: Tyson Foods, Inc., Tyson Fresh Meats, Inc., and fifteen individual Tyson employees. [Dkt. 1-1 (hereafter, "Compl.")] The complaint asserts a single cause of action against all defendants for "Gross Negligence." [*Id.* ¶¶ 153-62] Defendants timely removed to this Court based on federal officer and federal question jurisdiction. [Dkt. 1]

The complaint alleges that Mr. Scott worked at the Independence facility; that Mr. Orvis worked at the Waterloo facility; that they contracted COVID-19; and that they passed away from the disease. [Compl. ¶¶ 16-17, 147-49, 151-52] But the complaint alleges no specific facts as to when, how, or why they contracted COVID-19, nor does the complaint include allegations that address or rule out contraction from other community sources of infection.

Indeed, the complaint does not actually allege that Mr. Simmons or Mr. Orvis contracted COVID-19 from Tyson, aside from the sole conclusory allegation that they sustained injury "as a direct result of Defendants' conduct." [Compl. ¶ 162]

## ARGUMENT

### I.    Plaintiffs' claim is barred in this Court under the Iowa Workers' Compensation Act.

The IWCA provides the exclusive remedy for workplace injury claims asserted against an employer. Iowa Code § 85.20(1). *See also Bailey v. Batchelder*, 576 N.W.2d 334, 337-38 (Iowa 1998) ("The injured employee's right to workers' compensation is the employee's exclusive remedy against the employer."). "[A]n employer is always immune from common law tort liability pursuant to" the IWCA. *Jensen v. Vanderleest*, Nos. 9-369, 98-1950, 1999 WL 975879, at *3 (Iowa Ct. App. Oct. 27, 1999).

The IWCA applies when an employee sustains "personal injuries . . . arising out of and in the course of the employment." Iowa Code § 85.3(1). Plaintiffs allege that Mr. Simmons and Mr. Orvis "worked at" Tyson's Independence and Waterloo facilities (Compl. ¶¶ 16-17) and were injured because Defendants allegedly failed to "follow the CDC and OSHA guidelines . . . to stem the spread of coronavirus among their employees" (*id.* ¶ 159).

The IWCA is therefore the "exclusive remedy" against Tyson for Mr. Scott's and Mr. Orvis' alleged workplace injuries under Iowa Code § 85.20. *Walker v. Mlakar*, 489 N.W.2d 401, 403 (Iowa 1992) (IWCA "is an injured worker's exclusive remedy against

an employer or coemployee, thereby providing the employer and coemployee immunity from common law tort liability"); *Tigges v. City of Ames*, 356 N.W.2d 503, 509 (Iowa 1984) (affirming dismissal for lack of jurisdiction where the IWCA's exclusivity provision applies).

That result follows from the fair compromise of no-fault workers' compensation systems. As the Iowa Supreme Court has explained, the Iowa legislature enacted a robust exclusive-remedy provision for workplace injury claims as part of a workers' compensation system that "provide[s] an expeditious and automatic remedy to injured employees." *Suckow v. NEOWA FS, Inc.*, 445 N.W.2d 776, 778-79 (Iowa 1989) (citation omitted). That "comprehensive statutory scheme[]" reflects a carefully drawn compromise:

> Employees give up their common law rights of actions against employers. In return employers give up their common law defenses and must pay employees for all work-related injuries regardless of fault. . . . [W]orkers' compensation claimants have a way, other than through judicial process, to resolve their claims against employers.

*Id.* That balance would be upset if Plaintiffs could avoid the IWCA through artful pleading. *See Harned*, 331 N.W.2d at 100-01 (dismissing employees' tort claims where they attempted to plead around the IWCA).

Iowa courts have repeatedly held that a plaintiff cannot circumvent the IWCA where the gist of the workplace injury claim against an employer is for bodily injury. *See, e.g.*, *Nelson v. Winnebago Indus., Inc.*, 619 N.W.2d 385, 389 (Iowa 2000) (affirming judgment for the employer: "A mere labeling of a claim for injuries [as an intentional tort] cannot avoid the exclusivity of workers' compensation if the gist of the claim is for bodily injury."). This is because "if the essence of the action is recovery for physical injury or death . . . the action should be barred." *Id.*

The *Mielke v. Ashland, Inc.* decision is on point. Civ. No. 4:05-CV-88, 2005 WL 8157992, at *4 (S.D. Iowa July 29, 2005). In *Mielke*, a plaintiff asserted claims against an employer for negligence and other torts arising out of the alleged workplace death of an employee from leukemia. After removal to federal court, the employer moved to dismiss, arguing that the plaintiff's sole remedy was limited to the IWCA. *Id.* at *1.

The court agreed and dismissed the claim. Citing the Iowa Supreme Court's decision in *Nelson*, the *Mielke* court held that where the plaintiff sued "for damages attributed to an occupational disease she does not dispute arose 'out of'" the employee's employment, and where "'the gist of the claim is for bodily injury' [or] . . . occupational disease leading to death," the plaintiff "cannot avoid the exclusivity of workers' compensation." *Id.* at *4 (quoting *Nelson*, 619 N.W.2d at 389).

The same reasoning and result apply here. The complaint plainly alleges that Mr. Simmons and Mr. Orvis suffered workplace injuries while working at Tyson. [*E.g.*, Compl. ¶¶ 16-17, 159 (alleging gross negligence based on alleged failure to comply with "OSHA guidelines" to "stem the spread of coronavirus among their employees")] Accepting those allegations as true, that claim falls squarely within the IWCA. *See* Iowa Code § 85.3(1) (providing compensation for "any and all personal injuries sustained by an employee arising out of and in the course of the employment").

\*       \*       \*

The rest of this motion **addresses other deficiencies in the complaint, but the Court need go no further** in its analysis. The claim against Tyson is barred because the IWCA requires that claim to be pursued before the Iowa Division of Workers' Compensation.

## II. Plaintiffs fail to adequately plead causation.

Complaints must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative

level.'" *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable . . . ." *Iqbal*, 556 U.S. at 678.

Applying those standards is a two-step inquiry. *First*, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Significantly, the "assumption of truth" applicable to well-pleaded facts does not apply to "pleadings that . . . are no more than conclusions." *Id.* at 679.

*Second*, having identified the well-pleaded factual allegations, the Court considers whether the remaining factual allegations are sufficient to "nudge" the Plaintiffs' claims "across the line from conceivable to plausible." *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570). This is a "context-specific task" and "requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, in determining whether the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. 678).

This standard is not met when the alleged harm could be explained by an alternative theory that the complaint does not plead "sufficient factual matter" to rebut. *Iqbal*, 556 U.S. at 678; *see also, e.g.*, *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998-99 (9th Cir. 2014) (dismissal required where allegations are "consistent with both [Plaintiffs'] theory of liability and [an] innocent alternative"). Simply put, more than a "sheer possibility" of liability is required to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Here, Plaintiffs' negligence claim is not adequately pleaded because the complaint fails to plausibly allege causation. Indeed, the complaint contains only one

conclusory allegation of causation—that "[a]s a direct result of Defendants' conduct, Plaintiffs sustained physical and emotional harm." [Compl. ¶ 162]

But to establish causation, Plaintiffs must plead—and ultimately prove—that Mr. Simmons and Mr. Orvis contracted COVID-19 *from their work* rather than else-where, and then, that they contracted COVID-19 *due to Tyson's alleged gross negligence* rather than some other cause. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) ("When ruling on a motion to dismiss, we look to whether the plaintiffs' allegations suffice to show the required causal connection between the defendant's wrongful conduct and the plaintiffs' losses.").

The complaint fails to meet that standard. Plaintiffs sole allegation of causation is precisely the sort of "unadorned, the-defendant-unlawfully-harmed-me accusation" that a court cannot accept as true in ruling on a motion to dismiss. *Iqbal*, 556 U.S. at 678. As the Supreme Court instructed, a plaintiff cannot meet his pleading burden simply by "tender[ing] 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

At least one federal district court has dismissed a similar complaint brought by COVID-infected passengers of Princess Cruise Lines, holding that while the passengers "allege they 'contracted COVID-19 on Defendant's ship, [the complaint] fails to contain sufficient allegations to plausibly support that conclusion.'" Order at 8, *Fish v. Princess Cruise Lines Ltd.*, No. CV 20-3894 DSF (JCx) (C.D. Cal. Aug. 21, 2020), ECF No. 26 (citing *Iqbal*, 556 U.S. at 678). If causation cannot be plausibly assumed in a case involving passengers confined to a cruise ship for 12 days during an alleged COVID-19 outbreak, it is even more implausible to assume causation for individuals who are not confined to their workplace but rather are living in a community in the midst of a pandemic. *See also* Order Granting Defendant's Motion to Dismiss at 2, *Kuciemba v. Victory Woodworks, Inc.*, No. 20-cv-09355-MMC (N.D. Cal. May 10, 2021), ECF. No. 34 (dismissing claims without further leave to amend in part because

the plaintiff's theory as to how her husband's employer caused her to contract COVID-19 "fail[ed] to plead a plausible claim.").

Nor are allegations based on mere speculation enough. *See, e.g.*, *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001) ("[P]roximate cause, like the other elements, cannot be based upon mere speculation," and no "consequential fact in a case can be resolved by pure guesswork."); *Hardin Cty. Sav. Bank v. City of Brainerd*, 602 F. Supp. 2d 1012, 1024 (N.D. Iowa 2008) (dismissing complaint that failed to plead causation, noting that "Plaintiffs' conclusory legal allegation of the existence of proximate cause" was insufficient).

For these reasons alone, Plaintiffs' claim fails. But consideration of the then-existing knowledge of the pandemic further supports dismissal.

**Judicial experience and common sense.** *Iqbal* instructed courts to use their "judicial experience and common sense," 556 U.S. at 679, and thus Plaintiffs' bare and conclusory allegation that Mr. Scott and Mr. Orvis were infected as a result of Tyson's alleged conduct must be considered against the backdrop of knowledge—all of which is contained in the complaint or properly subject to judicial notice—that the virus was highly contagious, extremely difficult to trace, spread to every corner of our nation, and that even recommended prevention methods had limited efficacy.[1] For example, the CDC has identified the following challenges and characteristics of COVID-19 that made curtailing the pandemic extraordinarily difficult:

---

[1] This Court may take judicial notice of information contained on a governmental agency's webpage or in agency records and reports. *See Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 518-19 (5th Cir. 2015) (webpage); *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 831 F.3d 961, 968 (8th Cir. 2016) (agency reports). Consistent with these rules, courts across the country—including district courts in this Circuit—have taken judicial notice of basic information about COVID-19. *See, e.g.*, *In re RFC & ResCap Liquidating Tr. Action*, 444 F. Supp. 3d 967, 969 n.1 (D. Minn. 2020) (taking "judicial notice of the [CDC] website" regarding COVID-19, relying on *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793 (8th Cir. 2016)); *Valentine v. Collier*, 960 F.3d 707, 708 n.1 (5th Cir. 2020) ("[T]his court has taken judicial notice of statistics concerning COVID-19 already.").

- **Community spread.** The rapid spread of COVID-19 arose from community spread, defined by the CDC to mean "people have been infected with the virus in an area, including some *who are not sure how or where they became infected*."[2]

- **Highly contagious.** COVID-19 "is highly contagious." [Compl. ¶ 39] As of June 17, 2021, more than 33 million cases had been confirmed nationwide, and over 372,000 in Iowa. Those numbers increased for over a year, beginning in early 2020, despite stay-at-home orders, mandatory-mask orders, size limitations on gatherings, etc.[3]

- **Many unreported cases.** The CDC estimated that, for every reported case of COVID-19 in the United States, there were many more unreported cases—in part because millions of Americans were unknowingly infected.[4]

- **Delayed onset and asymptomatic carriers.** Tracking was difficult because the time between exposure and symptom onset can average a week or more, and because of the large percentage of infected people who were asymptomatic.[5] Even for symptomatic individuals, the incubation period—the time between exposure and symptom onset—varied on average between 2 to 14 days; thus someone could be infected for up to 14 days before realizing

---

[2] CDC, *Frequently Asked Questions: Coronavirus Disease 2019 (COVID-19)* (updated May 25, 2021), https://www.cdc.gov/coronavirus/2019-ncov/faq.html (emphasis added).

[3] *See* CDC, *U.S. COVID-19 Cases and Deaths by State* (updated June 17, 2021), https://www.cdc.gov/covid-data-tracker/#cases.

[4] *See* CDC, *Transcript for the CDC Telebriefing Update on COVID-19* (June 25, 2020), https://www.cdc.gov/media/releases/2020/t0625-COVID-19-update.html.

[5] *See The Implications of Silent Transmission for the Control of COVID-19 Outbreaks* ("Silent Transmission"), Proceedings of the National Academy of Science of the United States of America (July 28, 2020), https://www.pnas.org/content/117/30/17513; CDC, *COVID-19: Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)* ("Clinical Guidance for Management of Patients") (updated Feb. 16, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html.

they were sick.[6] Other infected individuals never realized they were sick.[7] Pre-symptomatic and asymptomatic persons are believed to be a significant cause of the pandemic's propagation.[8]

In short, with coronavirus spreading widely throughout the community, the conclusory allegation that an individual contracted the virus at work is not a well-pleaded fact and, in the absence of further detail, is not entitled to an "assumption of truth." *Iqbal*, 556 U.S. at 678-79; *see also Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) ("Courts must not presume the truth of legal conclusions couched as factual allegations.").

**Analogous cases.** In analogous cases, courts have dismissed complaints for failure to properly allege causation where "judicial experience and common sense" indicate that causation cannot plausibly be assumed. *See, e.g.*:

- **Pneumonia—***Peterson v. Silverado Senior Living, Inc.*, 790 F. App'x 614, 617 (5th Cir. 2019) (affirming dismissal where, "[e]ven accepting the alleged facts as true, the Peterson's second amended complaint is insufficient to support a plausible inference that Silverado's actions were more likely than not the cause of Ruby's death" because, *e.g.*, "we are being asked first to agree that, of all possible causes, Seroquel caused Ruby's pneumonia");

- **Abdominal pain and liver problems—***Cary v. Hickenlooper*, 673 F. App'x 870, 875 (10th Cir. 2016) ("But he makes only conclusory assertions that these conditions are the result of exposure to toxic water at SCF. He fails to present any specific facts to show that his exposure to minimally elevated levels of uranium or other toxins at SCF has caused or exacerbated these problems.");

---

[6] *See* CDC, *COVID-19: Clinical Questions about COVID-19: Questions and Answers* (updated Mar. 4, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Transmission; *see also Clinical Guidance for Management of Patients*.

[7] *See* CDC, *COVID-19: COVID-19 Pandemic Planning Scenarios* (updated Mar. 19, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html.

[8] *See Silent Transmission*.

- **Abdominal infections**—*Rincon v. Covidien*, No. 16-CV-10033 (JMF), 2017 WL 2242969, at \*1 (S.D.N.Y. May 22, 2017) ("Ignoring conclusory assertions and the recitation of legal standards, however, Rincon fails to allege any facts that plausibly establish . . . causation. . . . Nothing in the Amended Complaint even endeavors to explain why the [defendant's alleged negligence] is a more likely, let alone proximate, cause of Rincon's alleged harms. In the final analysis, therefore, Rincon offers only the sort of '[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements,' that the Supreme Court has made clear is insufficient to survive a motion to dismiss.").

Similar to these cases, no inference of causation or wrongdoing is warranted from the allegation that Mr. Scott and Mr. Orvis became ill with COVID-19. The fact that they contracted a highly contagious disease does not raise any suggestion that Tyson, or anyone else, was grossly negligent. Indeed, there are many alternative sources of infection, none of which the complaint rules out. They could have contracted COVID-19 in their communities or residences, in retail stores or other essential businesses, from an asymptomatic or pre-symptomatic person, from a symptomatic person wearing a mask, or from a virus-contaminated fomite—all potential sources unrelated to Tyson's alleged actions or inaction. Indeed, the complaint itself identifies alternative sources—"sharing transportation" and "frequent contact with fellow workers in community settings"—but makes no effort to rule them out. [Compl. ¶ 61]

Moreover, even if the complaint adequately alleged that they were exposed to COVID-19 at work, this still would not establish the critical required link between their infection and specific alleged wrongful conduct by Tyson. *See Schaaf*, 517 F.3d at 550 ("Unless the plaintiff can show that the defendant's fraud caused his loss, he cannot recover.").

\*    \*    \*

The complaint fails under established pleading standards, and it is especially important to adhere to those standards here. Nearly 600,000 Americans have died and millions more have been sickened. If conclusory allegations of causation are permitted, virtually any employer, business, school, church, or host could be brought into protracted litigation based on speculation. For this reason, more than conclusory allegations are required to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

## III. The complaint fails to comply with the Iowa COVID-19 Response and Back-to-Business Act.

The complaint also fails to plead an exception to the recently-enacted "COVID-19 Response and Back-to-Business Limited Liability Act," which provides that persons who possess or control a premises and who "invite[] or permit[] an individual onto a premises, shall not be liable for civil damages for any injuries sustained from the individual's exposure to COVID-19," absent a showing of "actual malice," "reckless[]" disregard of "substantial and unnecessary risk," or "intentional[] expos[ure]." Iowa Code § 686D.4; *see also id.* § 686D.2 (defining "person" by reference to § 4.1(20)).[9]

Iowa courts "construe statutory immunity provisions broadly" and "exceptions to immunity narrowly." *Nelson v. Lindaman*, 867 N.W.2d 1, 9 (Iowa 2015) (citing *Cubit v. Mahaska Cty.*, 677 N.W.2d 777, 784 (Iowa 2004) (collecting cases construing Iowa immunity provisions broadly)). Here, aside from conclusory allegations, the complaint fails to set forth any factual allegations to satisfy the required elements of actual malice, intentional misconduct, or reckless disregard of substantial and unnecessary risk. In fact, the complaint and "judicial experience and common sense" show the opposite. The complaint acknowledges that the "virus is highly contagious," "spread through cities, towns, and rural areas throughout the country" in locations that are completely unrelated to Tyson, and that the United States had "more than 27.6 million confirmed cases" as of

---

[9] The Act has an effective date of July 1, 2020, but its provisions "appl[y] retroactively to January 1, 2020." IA LEGIS 1070 (2020), 2020 Ia. Legis. Serv. Ch. 1070, Sec.11 (S.F. 2338).

the date of the complaint. [Compl. ¶¶ 38-39] After acknowledging the highly contagious nature of the pandemic and existence of community spread, Plaintiffs assert a single conclusory allegation that "[a]s a direct result of Defendants' conduct, Plaintiffs sustained physical and emotional harm," without negating any alternate source of the alleged infections. [*Id.* ¶ 162] As described above, Plaintiffs fail to allege facts sufficient to plead gross negligence, and because Plaintiffs cannot satisfy even the gross negligence standard, their allegations are a far cry from the "actual malice," "intentional[] expos[ure]," or "reckless[]" disregard of "substantial and unnecessary risk" required by the Act—standards which, at the very least, require a showing that Tyson showed no care for the risk of exposure. *See Schneider v. Par.*, 242 Iowa 1147, 1153, 49 N.W.2d 535, 538 (1951) ("[T]he Legislature intended the word reckless . . . to mean proceeding without heed of or concern for consequences. . . . Recklessness implies no care, coupled with disregard for consequences."). No such allegations exist here. Thus, under the Act, Tyson cannot "be liable for civil damages" for Mr. Scott's or Mr. Orvis' "exposure to COVID-19," and this case must be dismissed. Iowa Code § 686D.4.

## IV. Plaintiffs' claims are preempted.

### A. The complaint takes no account of the federal designation of Tyson facilities as critical infrastructure.

Even if the complaint were not barred by the IWCA and the Iowa Back to Business Act, and even if it otherwise satisfied federal pleading standards, its allegations would still fail to state a claim because it fails to take account of the designation of Tyson as critical infrastructure by federal officials up to and including the President and Vice President, and the repeated federal directives that Tyson and other processors continue operations pursuant to federal guidelines during the pandemic.[10]

---

[10] As explained in Tyson's Notice of Removal (Dkt. 1 at 6 n.5), "Animal Food Manufacturing" and various subcategories such as "[m]anufacture of food for household pets" are included by the federal government within the Food and Agriculture sector of critical infrastructure. *See* Food and Agriculture Sector-Specific Plan (2015) at 93-94. Accordingly, as the complaint

Just days after declaring a national emergency, the President personally met with Tyson and other food industry companies and explained that employees in "critical infrastructure"—including companies like Tyson that are essential to maintaining food-supply chains—have a "special responsibility" to continue to follow CDC guidelines while providing food during the national emergency. Exec. Office of Pres., *The President's Coronavirus Guidelines for America* at 2 (Mar. 16, 2020). As explained in Tyson's Notice of Removal (Dkt. 1 at 2-4), from the outset of the pandemic, Tyson worked hand-in-hand with, and pursuant to the directives of, numerous federal agencies and officials to aid in the government's efforts to ensure that the greatest national health crisis in a century would not also spiral into a national food shortage. And in April 2020, in response to contradictory actions by state and local governments, the President formally reinforced the federal imperatives through the *Food Supply Chain Resources* executive order under the Defense Production Act ("DPA"):

> It is important that processors of beef, pork, and poultry ("meat and poultry") in the food supply chain **continue operating and fulfilling orders** to ensure a continued supply of protein for Americans.
>
> \*    \*    \*
>
> [C]losures **threaten the continued functioning** of the national meat and poultry supply chain, undermining critical infrastructure during the national emergency.
>
> \*    \*    \*
>
> [T]he Secretary of Agriculture shall take all appropriate action . . . to **ensure that meat and poultry processors continue operations** consistent with the guidance for their operations jointly issued by the CDC and OSHA.

acknowledges, in March 2020, the U.S. Department of Homeland Security designated "animal slaughter and processing facilities," including "pet and animal feed processing facilities" as essential critical infrastructure. [Compl. ¶¶ 65-66] Plaintiffs' suggestion that the Independence facility is somehow stripped of this designation because it produces animal food (*id.* ¶¶ 74, 114-15) is incorrect.

Exec. Office of Pres., *Executive Order on Delegating Authority Under the DPA with Respect to Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19*, 85 Fed. Reg. 26,313, 26,313 (Apr. 28, 2020).

**The President's determinations preempt state law.** Congress gave the President discretion to determine the "manner," "conditions," and "extent" of critical infrastructure industries' operations during a national emergency. 50 U.S.C. § 4511(a). Moreover, the DPA "accord[s] the Executive Branch great flexibility" in "seek[ing] compliance with its priorities policies," ranging from "informal means of persuasion" (such as the *Coronavirus Guidelines for America*) to more "formal or technical acts" (such as the *Food Supply Chain Resources* executive order). *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 993-94 (5th Cir. 1976). Once the President has made those determinations, however, "state law is naturally preempted to the extent of any conflict." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

Significantly, "[s]uch a conflict occurs" whenever state law would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hillman v. Maretta*, 569 U.S. 483, 490 (2013) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). The President's determinations here—concerning operation of critical infrastructure during a national emergency—"represent[] a national response to a specific problem of 'truly national' concern." *Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1078-79 (D.C. Cir. 2003) (quoting *United States v. Morrison*, 529 U.S. 598, 617-18 (2000)). And "concurrent jurisdiction" by "local law" would "defeat the congressional goals underlying" the DPA. *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 286 (1971).

The Supreme Court's decision in *Crosby* illustrates this point. *Crosby* invalidated a Massachusetts law prohibiting its agencies from transacting with companies that also conducted business with Burma "owing to [the state law's] threat of

frustrating federal statutory objectives." 530 U.S. at 366. But Congress had clearly given the President "flexible and effective authority over economic sanctions against Burma." *Id.* at 374. Because Congress had "gone to such lengths to empower the President," a state law that would "blunt the consequences of discretionary Presidential action" under the statute would impermissibly "compromise his effectiveness" and thus is preempted. *Id.* at 376.

Similarly here, there is no way that states can impose their own determinations regarding the "manner," "conditions," and "extent" of critical infrastructure facility operations during COVID-19 without compromising the President's ability to make those determinations for the entire nation. 50 U.S.C. § 4511(a). The President confirmed as much in the *Food Supply Chain Resources* order, directing the Secretary of Agriculture "to ensure that meat and poultry processors continue operations consistent with the guidance for their operations jointly issued by the CDC and OSHA."

\*       \*       \*

Plaintiffs seek to impose liability based on Tyson's alleged failure to operate consistently with state-law standards governing its operations (*e.g.*, Compl. ¶¶ 156, 158, 160), or to shut down its facilities entirely despite federal directives to the contrary (*e.g.*, *id.* ¶¶ 94, 96-97, 109, 115, 125). But application of those standards to a meat processor's operations during COVID-19 would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in the same way as a state statute or regulation imposing the standards: They would impermissibly undermine the President's statutory authority to adopt national priorities determinations. *Hines*, 312 U.S. at 67. Plaintiffs' claim is therefore preempted.

### B. The complaint takes no account of the broad, express preemption of the Federal Meat Inspection Act (FMIA).

The complaint also takes no account of the federal preemption that applies to federally-regulated meat facilities. *See* FSIS Meat, Poultry and Egg Product

Inspection Directory at 553-54 (June 7, 2021) (identifying the Waterloo facility as establishment numbers M244W and M21397 + P21397).[11] The FMIA prohibits states from imposing requirements that are "in addition to, or different than" those prescribed under the Act. 21 U.S.C. § 678. The Supreme Court has held that this provision "sweeps widely" and "prevents a State from imposing any additional or different—even if non-conflicting—requirements that fall within the scope of the Act and concern a slaughterhouse's facilities or operations." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459-60 (2012). If the U.S. Department of Agriculture's Food Safety and Inspection Service ("FSIS") "could issue regulations under the FMIA . . . mandating" the requirement at issue, then the State's requirement is preempted. *Id.* at 466.

And although "state laws of general application . . . will *usually* apply to slaughterhouses," *Harris*, 565 U.S. at 467 n.10 (emphasis added), the "word 'usually' implies that *sometimes* the FMIA *does* preempt state workplace safety regulations." Memorandum Opinion and Order, *Wazelle v. Tyson Foods, Inc.*, 2:20-CV-203-Z (N.D. Tex. June 25, 2021), ECF No. 44 at 4 (holding that Tyson stated a plausible FMIA preemption defense for purposes of federal officer removal). Indeed, as another federal district court recently explained in a similar case alleging state-law tort claims related to COVID-19 safety measures at another Tyson facility:

> This is not a typical workplace injury case such as a slip and fall that falls outside of the scope of the FMIA's preemption provision. . . . Instead, this case arose in the unique context of a global pandemic. Workplace conditions and procedures related to disease prevention implicate food safety, which could bring Plaintiffs' claims under the ambit of the FMIA.

---

[11] https://www.fsis.usda.gov/sites/default/files/media_file/2021-06/MPI_Directory_by_Establishment_Name_0.pdf. This Court may properly take judicial notice of information contained on a governmental agency's webpage. *See supra* note 1.

*Id.* at 5; *see also Fields v. Brown*, No. 6:20-CV-00475, 2021 WL 510620, at \*5 (E.D. Tex. Feb. 11, 2021) (holding that Tyson's preemption defense under the substantially identical PPIA preemption provision was plausible).

At the core of the complaint, Plaintiffs fault Tyson for not implementing measures *different from* and *in addition to* the requirements that FSIS has imposed regarding employee hygiene, infectious disease, and sanitation. *See, e.g.*, 9 C.F.R. § 416.5(c) (setting federal requirements under the FMIA regarding cleanliness, protective attire, and "disease control"). Preemption follows.

## CONCLUSION

The coronavirus pandemic presented unprecedented challenges to governments, businesses, and organizations around the world. Tyson responded to those challenges, working to meet or exceed federal workplace guidelines to mitigate risks and protect worker safety. Despite the tragedy of Mr. Scott's and Mr. Orvis' deaths, this Court is simply the wrong forum to resolve Plaintiffs' claims. Under the IWCA, workplace injury claims must be adjudicated by the Iowa Division of Workers' Compensation. For that reason and the others explained above, Tyson respectfully requests the complaint be dismissed with prejudice.

Dated: June 28, 2021                    Respectfully submitted,


  /s/ Kevin J. Driscoll
Kevin J. Driscoll               AT0002245
Andrew T. Patton                AT0011703
**FINLEY LAW FIRM, P.C.**
699 Walnut Street, Suite 1700
Des Moines, Iowa 50309
Telephone: 515-288-0145
Facsimile:  515-288-2724
Email: kdriscoll@finleylaw.com
       apatton@finleylaw.com

Christopher S. Coleman
(*pro hac vice* forthcoming)
Jessica L. Everett-Garcia
(*pro hac vice* forthcoming)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: 602.351.8000
Facsimile: 602-648.7000
Email: CColeman@perkinscoie.com
        JEverettGarcia@perkinscoie.com

**ATTORNEYS FOR TYSON FOODS, INC., TYSON FRESH MEATS GROUP, JOHN H. TYSON, NOEL W. WHITE, DEAN BANKS, STEVEN R. STOUFFER, TOM BROWER, MARY A. OLEKSINK, ELIZABETH CROSTON, SCOTT WALSTON, DAVID SCOTT, AND RAMIZ MUJELIC**

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 28, 2021, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF system as follows:

Elizabeth Araguas
**NIDEY ERDAHL MEIER & ARAGUÁS, PLC**
425 2nd Street SE, Suite 1000
Cedar Rapids, Iowa 52401
earaguas@eiowalaw.com

Jon Loevy
Gayle Horn
Roshna Bala Keen
Mark Loevy-Reyes
Katie Roche
**LOEVY & LOEVY**
311 N. Aberdeen
Chicago, Illinois 60607
jon@loevy.com
gayle@loevy.com
roshna@loevy.com
mark@loevy.com
katie@loevy.com

*Attorneys for the Plaintiffs*

Nicholas Klinefeldt
**FAEGRE DRINKER BIDDLE & REATH LLP**
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
nick.klinefeldt@faegredrinker.com

*Attorneys for Defendants Tom Hart, Cody Brustkern, John Casey, Bret Tapken, and Hamdija Beganovic*

/s/ Kevin J. Driscoll